UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BOGLE,

    Plaintiff,

v.

MIKE RAINES,

    Defendant.

_____/

Hon. Janet T. Neff

Case No. 1:09-CV-1046

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment. (Dkt. #9). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied**.

Plaintiff initiated this action on November 16, 2009, against Eaton County Sheriff, Mike Raines. On December 17, 2009, Plaintiff submitted his First Amended Complaint. In his Amended Complaint, Plaintiff alleges that Defendant denied him appropriate medical treatment in violation of his Eighth Amendment rights and subjected him to unlawful retaliation in violation of his First Amendment rights. Plaintiff also asserts that Defendant has violated his "First Amendment right to confidential communications with his attorney." Plaintiff now moves for summary judgment as to this latter claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty*

*v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion

"is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **ANALYSIS**

The following allegations are contained in Plaintiff's amended complaint. On September 9, 2009, he was sentenced to serve a 270 day sentence in the Eaton County Jail (ECJ).[1] Pursuant to jail policy, telephone calls to an attorney are recorded. Every time Plaintiff has placed a telephone call to his attorney, "a recording comes on that states the telephone conversation will be recorded." The jail does not have a procedure that allows Plaintiff to make confidential telephone calls to his attorney. Plaintiff "fears that his telephone conversations with his attorneys are recorded and then provided to the Defendant or his counsel." As a result, Plaintiff is "reluctant" to discuss matters over the telephone with his attorney. Plaintiff asserts that Defendant's conduct violates his "First Amendment right to confidential communications with his attorney."

As Plaintiff correctly asserts, the "right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition." *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 611 (9th Cir. 2005). As the Supreme Court has long recognized, "inmates must have a reasonable opportunity to seek and receive the assistance of attorneys" and "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). With respect to prisoners, however, such rights are not absolute or without limitation.

---

[1] Plaintiff subsequently asserted that he was released from the Eaton County Jail on February 28, 2010. (Dkt. #26, Exhibit 1).

It is well recognized that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). As is equally well recognized, however, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Wolfish*, 441 U.S. at 545. Moreover, operating a jail is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

Accordingly, when reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of

fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policies at issue are reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

In support of his motion, Plaintiff has submitted an affidavit in which he asserts that during his incarceration at ECJ he "had cause and the need to speak to at least three attorneys" who were helping him pursue various matters. (Dkt. #26, Exhibit 1). Plaintiff asserts that on one occasion he

asked a deputy if he could use the telephone in a "jail training room" to contact his attorney. According to Plaintiff, the deputy denied his request, stating that "that phone would not be set up for recording." The deputy further informed Plaintiff that "there were 'no phones for attorney calls.'" Plaintiff asserts that as a result he believed he "had no choice" other than to allow his telephone calls to his attorneys to be recorded. Plaintiff further asserts that "[i]nstead of using the telephone, I waited for my civil attorneys to show up, to discuss the course of my case with them." *Id.*

In response to Plaintiff's motion, Defendant has submitted a sworn statement from Donald Ulrey, the Jail Administrator who is "responsible for the day to day operation and administration of the Eaton County Jail, including the inmate telephone system." (Dkt. #24, Exhibit 1). Ulrey asserts that the jail's telephone system permits "nearly every inmate access to a telephone, located in their living areas, to make outgoing collect calls to any phone number of their choosing" on a "daily basis" between the hours of "5:45 am until 11:00 pm." The jail "does not require an inmate to provide a list of approved telephone numbers that the inmate may call, limit the number of persons who the inmate may call, or otherwise control who the inmate may call." The jail's phone system "can identify calls made to a certain number, but it cannot identify any call made by a particular inmate." The jail's phone system "records all phone conversations initiated by inmates."

According to Ulrey, "[t]he Eaton County Jail has adopted this telephone system to provide inmates the maximum access to telephone service, with minimal need for staff involvement or record keeping when an inmate needs or wants phone service." Ulrey further asserts that "[t]his sytem also permits the jail to provide this service without expense to the facility." As to the recording of telephone calls, Ulrey asserts that "[t]he purpose of recording all calls, among other things, is to assure that the inmate is using the phone system in accordance with Jail policy, is not using the Jail phone

system to violate the law or plan such a violation, is not using the phone to make harassing, threatening or obscene calls, for use in investigating incidents in the jail, and otherwise to maintain security within the Eaton County Jail."

With respect to Plaintiff's use of the jail telephone system, Ulrey asserts that Plaintiff's "access to the phone system has not been discontinued due to his misuse or violation of Jail policy." Ulrey asserts that "[n]o calls, whether or not made to an attorney, that might have been made by [Plaintiff] have been monitored by Jail staff." Furthermore, "[n]o recording of calls, whether or not made to an attorney, that might have been made by [Plaintiff] have been retrieved by Jail staff for later review."

Ulrey asserts that Plaintiff never "objected to, or had any concern" that telephone calls to his attorney were being recorded. Plaintiff never "submitted a grievance, or registered a complaint, concerning his use of the telephone system, or raised an objection to the recording of any calls he might have made using the inmate phone system." Plaintiff "never requested the use of an unrecorded telephone line for communication with his attorney(s) in this case." Ulrey further asserts, however, that he possesses the authority "to designate that calls made from the inmate phone system to a specific number to be unrecorded." According to Ulrey, if Plaintiff had made such a request, it "would have been granted, to the extent that request could be accommodated in a manner consistent with facility security and personnel."

Viewing the evidence in the light most favorable to Defendant, the non-moving party, reveals that there exist genuine factual disputes which precludes granting Plaintiff's motion for summary judgment. Simply put, the evidence submitted by Defendant, if believed, demonstrates that there exists a valid, rational connection between the policy in question and the legitimate governmental interest put

forward in justification thereof. Moreover, if Defendant's evidence is believed, consideration of the remaining *Turner* factors weighs in Defendant's favor. Plaintiff has failed to demonstrate that he is entitled to the relief sought. Accordingly, the undersigned recommends that Plaintiff's motion be **denied**.

## CONCLUSION

For the reasons articulated herein, the Court recommends that <u>Plaintiff's Motion for Partial Summary Judgment</u>, (dkt. #9), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: July 12, 2010          /s/ Ellen S. Carmody
                             ELLEN S. CARMODY
                             United States Magistrate Judge