UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BOGLE,

    Plaintiff,                               Hon. Janet T. Neff

v.                                       Case No. 1:09-CV-1046

MIKE RAINES,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Renewed Motion for Class Certification, (dkt. #47), and Plaintiff's Second Motion for Summary Judgment, (dkt. #48). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion for class certification be **denied** and Plaintiff's motion for summary judgment be **granted in part and denied in part**.

## BACKGROUND

Plaintiff initiated this action on November 16, 2009, against Eaton County Sheriff, Mike Raines. Plaintiff soon thereafter amended his complaint. The following allegations are contained in Plaintiff's amended complaint.

On September 9, 2009, Plaintiff was sentenced to serve a 270 day sentence in the Eaton County Jail (ECJ).[1] Pursuant to jail policy, all telephone calls initiated by an inmate, including those to an attorney, are recorded. Every time Plaintiff placed a telephone call to his attorney, "a recording"

---

[1] Plaintiff was released from the Eaton County Jail on February 28, 2010. (Dkt. #26, Exhibit 1).

informed him that "the telephone conversation will be recorded." The jail did not have a procedure that allowed Plaintiff to make confidential telephone calls to his attorney. Plaintiff "fear[ed] that his telephone conversations with his attorneys [were] recorded and then provided to the Defendant or his counsel." As a result, Plaintiff was "reluctant" to discuss matters over the telephone with his attorney.

Plaintiff alleges that Defendant's policy of recording all telephone calls initiated by prisoners to an attorney violates his "First Amendment right to confidential communications with his attorney." Plaintiff also alleged that Defendant denied him appropriate medical treatment and subjected him to unlawful retaliation in violation of his Eighth Amendment and First Amendment rights, respectively. These particular claims were subsequently dismissed by stipulation. Seeking monetary, declaratory, and injunctive relief, Plaintiff now moves for summary judgment as to his remaining First Amendment claim. Plaintiff also moves to certify a class, for purposes of declaratory and injunctive relief only, regarding this particular claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to

show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.        **The Challenged Policy is Unconstitutional**

During the time that Plaintiff was incarcerated at the Eaton County Jail, inmates were afforded telephone access. (Ulrey Affidavit, Dkt. #24, Exhibit 1; Ulrey Deposition, Dkt. #48, Exhibit 2 at 5-16). Specifically, the jail provided telephones in the inmate "living areas" which inmates could use to place "outgoing collect calls to any phone number of their choosing" between the hours of 5:45 a.m. and 11:00 p.m. daily. (Ulrey Affidavit, Dkt. #24, Exhibit 1. Despite the fact that jail officials had the ability to designate that certain telephone calls not be recorded, every telephone call initiated by an inmate was recorded including those placed to an attorney. (Ulrey Affidavit, Dkt. #24, Exhibit 1; Ulrey Deposition, Dkt. #48, Exhibit 2 at 5-24; Kibiloski Deposition, Dkt. #48, Exhibit 1 at 4-25).

As courts recognize, "in the First Amendment context, prisoners have no per se constitutional right to use a telephone." *Antonelli v. Walters*, 2009 WL 921103 at *11 (E.D. Ky., Mar. 31, 2009) (collecting cases); *see also*, *Holloway v. Magness*, 2011 WL 204891 at *6-7 (E.D. Ark., Jan. 21, 2011) (because "the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation on the part of the government. . .it follows that the Constitution does not require prison systems to provide telephone service to prison inmates"). While prison officials are under no affirmative obligation to provide inmates with access to telephones, such does not authorize prison officials who do afford such access to listen to prisoner's telephone conversations for any reason or no reason. *See, e.g., Holloway v. Magness*, - - - F.3d - - -, 2012 WL 301037 at *2 (8th Cir., Feb. 2, 2012) (recognizing that if a prison chooses to provide telephone access to inmates any limitation or interference with such is subject to First Amendment scrutiny). Rather, a prisoner's telephone access is "subject to rational limitations" premised upon legitimate penological considerations. *Washington v. Reno*, 35 F.3d

1093, 1100 (6th Cir. 1994); *see also*, *Ziegler v. McGinnis*, 32 Fed. Appx. 697, 698-99 (6th Cir., Jan. 31, 2002) (restrictions on prisoner access to telephones do not violate First Amendment if "rationally related to legitimate security interests of the prison").

As Plaintiff observes, the "right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition." *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 611 (9th Cir. 2005). Moreover, as the Supreme Court has long recognized, "inmates must have a reasonable opportunity to seek and receive the assistance of attorneys" and "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). As is equally well recognized, however, the rights enjoyed by prisoners are neither absolute nor without limitation.

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Nevertheless, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations," *Wolfish*, 441 U.S. at 545, as operating a jail is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be

accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered

and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484. Consideration of these factors, in light of the evidence submitted, persuades the Court that the challenged policy is unconstitutional.

> **A.     Connection between the Policy and Legitimate Governmental Interests**

Defendant supports the policy of recording telephone calls between an inmate and his attorney on the ground that to simply record every telephone call initiated by an inmate "provide[s] inmates the maximum access to telephone service, with minimal need for staff involvement or record keeping." (Ulrey Affidavit, Dkt. 24, Exhibit 1). Defendant further asserts that telephone calls initiated by an inmate to an attorney were recorded "to assure that the inmate is using the telephone system in accordance with Jail policy, is not using the Jail phone system to violate the law or plan such a violation, is not using the phone to make harassing, threatening or obscene calls, for use in investigating incidents in the jail, and otherwise to maintain security within the Eaton County Jail." (Ulrey Affidavit, Dkt. #24, Exhibit 1).

The Court finds that Defendant satisfies this initial prong of the analysis. It is not inappropriate for jail officials to consider the cost, in terms of personnel and other resources, when designing a particular policy. Moreover, maintaining the security of a correctional facility is always a

legitimate concern and jail officials should not be required to wait until after security is breached or impaired to implement a policy to prevent such. Thus, there exists a valid, rational connection between the challenged policy and the proffered rationale underlying such.

### B.   Alternative Means of Exercising the Right in Question

Plaintiff testified that he was able to meet with his attorneys in person at the jail on several occasions. (Bogle Deposition, Dkt. #56, Exhibit 1 at 34-37). Plaintiff testified that he believed that these in-person meetings were confidential. (Bogle Deposition, Dkt. #56, Exhibit 1 at 38-39). Donald Ulrey, who served as jail administrator during the relevant time period, testified that attorneys are able to meet with their clients at the jail and conduct "confidential communications." (Ulrey Deposition, Dkt. #48, Exhibit 2 at 24).

This evidence indicates that there existed an alternative means by which Plaintiff could communicate with his attorney. As the Supreme Court has indicated, when evaluating this prong in the context of a First Amendment claim alternative means of exercising the right in question "need not be ideal. . .they need only be available." *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003). Thus, this particular prong weighs in Defendant's favor.

### C.   Impact of Accommodation

With respect to this prong of the analysis, the Court must consider the impact that the requested accommodation, in this case to permit inmates to initiate non-recorded telephone conversations with their attorneys, would have on guards, other inmates, and the allocation of prison resources.

Steven Kibiloski, current jail administrator, testified concerning the process that jail officials would have to undertake to accommodate an inmate's request to conduct a confidential telephone conversation with an attorney. Kibiloski testified that accommodation of such a request would require jail officials to: (1) receive the request from the inmate; (2) verify that the person whom the inmate wanted to call was an attorney; and (3) "just moments to enter it in the system." (Kibiloski Deposition, Dkt. #48, Exhibit 1 at 9). Kibiloski testified that this process did not require much work, would take a very brief amount of time, and would not interfere with jail officials' other responsibilities. (Kibiloski Deposition, Dkt. #48, Exhibit 1 at 9-10). Donald Ulrey testified similarly. (Ulrey Deposition, Dkt. #48, Exhibit 2 at 14-15). Moreover, Defendant has presented no evidence that the cost or burden to jail staff to permit inmates to make unrecorded telephone calls to attorneys would be (or in the past was) significant or unreasonable.

Kibiloski and Ulrey also testified that they were aware of no general security concerns or specific incidents that necessitated the recording of telephone conversations between inmates and their attorneys. (Ulrey Deposition, Dkt. #48, Exhibit 2 at 13-14; Kibiloski Deposition, Dkt. #48, Exhibit 1 at 10). Defendant has likewise presented no evidence that permitting inmates to conduct unrecorded telephone conversations with their attorneys raises any legitimate security concerns.

In the Court's estimation, this factor weighs heavily in Plaintiff's favor. Simply put, the evidence thus far submitted reveals that accommodating a request by an inmate to have an unrecorded conversation with his attorney is easily accomplished, does not interfere with the ability of jail officials to perform their jobs, does not impose an unreasonable or substantial burden on the jail's resources, and raises no legitimate security concerns.

### D. Ready Alternatives

With respect to this prong, the Court must examine "whether the presence of ready alternatives undermines the reasonableness" of the challenged policy. *Bazzetta*, 539 U.S. at 136. As previously noted, *Turner* does not impose a "least-restrictive-alternative test," but instead considers whether the prisoner has identified an alternative policy or approach "that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Id.*

Defendant argues that the challenged policy advances the legitimate goals of preserving resources and minimizing security risks. As discussed above, however, the evidence thus far submitted reveals that permitting inmates to conduct unrecorded telephone calls with their attorneys would result in no more than a *de minimis* impact on the legitimate penological interests advanced in support of the challenged policy. This factor, therefore, also weighs quite heavily in Plaintiff's favor.

In sum, while the Court is reluctant to second guess the policies implemented by prison officials to govern the day-to-day operation of correctional facilities, Plaintiff has demonstrated that the challenged policy is not reasonably related to a legitimate penological interest, but is instead apparently motivated by nothing more than the desire to not provide the requested accommodation. The Court concludes, therefore, that the challenged policy violated Plaintiff's First Amendment rights.

## II. Plaintiff's Requests for Declaratory and Injunctive Relief are Moot

As previously noted, Plaintiff seeks monetary, declaratory, and injunctive relief. As previously observed, Plaintiff was released from the Eaton County Jail on February 29, 2010, which naturally raises the question whether Plaintiff's claims for declaratory and injunctive relief have been rendered moot. This is a matter which the Court can address on its own initiative because it implicates

the Court's subject matter jurisdiction. *See, e.g., Brock v. United States Department of Justice*, 256 Fed. Appx. 748, 750 (6th Cir., Nov. 21, 2007).

It is well established that the case-or-controversy requirement articulated in Article III of the United States Constitution "subsists through all stages of federal judicial proceedings" and "it is not enough that a dispute was very much alive when suit was filed." *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 461-62 (2007). A case becomes moot "when events occur during the pendency of the litigation which render the court unable to grant the requested relief." *Jones v. Caruso*, 421 Fed. Appx. 550, 551 (6th Cir., Apr. 28, 2011). Plaintiff's release from the Eaton County Jail, almost two years ago, certainly renders moot his request for injunctive relief. *See, e.g., Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Plaintiff's claim for declaratory relief is likewise moot because granting of such would not compel a change in Defendant's behavior in light of the fact that Plaintiff is no longer in the custody of the Eaton County Jail. *See, e.g., Deberry v. Davis*, 2012 WL 401679 at *2 (10th Cir., Feb. 9, 2012).

There exists an exception to mootness for disputes which are "capable of repetition yet evading review." *Wisconsin Right to Life, Inc.*, 551 U.S. at 462. This exception applies where: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is "a reasonable expectation that *the same complaining party* will be subject to the same action again." *Id.* (emphasis added). Plaintiff has presented neither evidence nor argument that he is reasonably likely to be incarcerated again in the Eaton County Jail. The Court, therefore, finds that this exception to the mootness doctrine is inapplicable. Accordingly, the undersigned recommends that Plaintiff's claims for declaratory and injunctive relief be dismissed as moot.

**III.**     **Plaintiff's Motion for Class Certification**

Plaintiff has again moved to certify a class, for purposes of declaratory and injunctive relief only, regarding the claim that the jail's policy of recording telephone calls initiated by inmates to their attorneys violates the First Amendment.

As the Sixth Circuit has observed, "[o]nce a class is certified, the mooting of the named plaintiff's claim does not moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists." *Gawry v. Countrywide Home Loans, Inc.*, 395 Fed. Appx. 152, 155 (6th Cir., Aug. 13, 2010).  On the other hand, if, prior to a class being certified, the named plaintiff's claims become moot, certification of a class is improper. *Id.*; *see also*, *Rosales v. El Rancho Farms*, 2011 WL 6153276 at *21 (E.D. Cal., Dec. 12, 2011) ("a named plaintiff cannot represent a class alleging claims that the named plaintiff does not have standing to raise"); *Portis v. City of Chicago*, 347 F.Supp.2d 573, 575-76 (N.D. Ill. 2004) (same).  Because Plaintiff seeks to represent the class only as to claims which Plaintiff lacks the ability to assert, the undersigned recommends that Plaintiff's motion for class certification be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Plaintiff's Renewed Motion for Class Certification, (dkt. #47), be **denied**.  The undersigned further recommends that Plaintiff's Second Motion for Summary Judgment, (dkt. #48), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's claims for injunctive and declaratory relief be dismissed as moot, but that with respect to Plaintiff's monetary damages claim, summary judgment be granted in Plaintiff's favor and that the case proceed on the issue of Plaintiff's damages.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  February 27, 2012            /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge